**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| **CLAUDIA LUTFALLAH** | : |
| 313 Cada Crescent | |
| Tecumseh, Ontario N8N 2Y4 | : |
| Plaintiff, | : |
| vs. | : |
| **GALEN ROBOTICS, INC.** | :   Case No._____ |
| 1100 Wicomico Street, Suite 725 | |
| Baltimore, Maryland 21230, | : |
| Serve on: | : |
| The Corporation Trust, Inc. | |
| 2405 York Road, Suite 201 | : |
| Lutherville, Maryland 21093 | |
| | : |
| and | |
| | : |
| **BRUCE W. LICHOROWIC** | |
| 1100 Wicomico Street, Suite 725 | : |
| Baltimore, Maryland 21230. | |
| | : |
| Defendants. | |

...oooOooo...

**COMPLAINT**

NOW COMES Plaintiff Claudia Lutfallah, by and through her attorneys, Andrew M. Dansicker and the Law Office of Andrew M. Dansicker, LLC, and hereby files this Complaint against Defendants for unpaid wages under the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL") and in support states the following:

## THE PARTIES

1. Plaintiff Claudia Lutfallah is a resident of Ontario, Canada and a former long-term employee of Galen Robotics, Inc. ("Galen"). Ms. Lutfallah was an employee within the meaning of the FLSA, MWHL and MWPCL.

2. Defendant Galen creates robots that assist physicians perform complex surgeries on tiny bones or soft tissue. During all relevant times, Galen maintained its principal corporate office in Baltimore, Maryland and was an employer withing the meaning of the FLSA, MWHL and MWPCL.

3. Defendant Bruce W. Lichorowic served as President and Chief Executive Officer of Galen during all relevant times with regards to the allegations herein and worked at Galen's corporate office in Baltimore, Maryland. On information and belief, Mr. Lichorowic was a substantial shareholder/owner of Galen and exercised full authority over all payroll issues at Galen. During all relevant times, Mr. Lichorowic was an employer within the meaning of the FLSA, MWHL and MWPCL.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. § 12101 *et seq.* as the case arises under federal law, the FLSA, and personal jurisdiction is proper in this Court, because Defendants transact extensive business in Maryland, and the events giving rise to this litigation took place in Maryland.

5. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the District of Maryland, Northern Division.

## **FACTS**

6. Ms. Lutfallah began working for Galen in November 2020 as Clinical Process Engineer reporting ultimately to Dave Levi, Hardware Team Manager.

7. At the time that she was hired to work for Galen, Ms. Lutfallah was paid an annual salary of $81,000.00. She was also informed that she would be eligible for a bonus payment of 15% of her base salary, and she was informed that she would be granted an option to purchase ten-thousand shares of Galen's common stock under Galen's stock option plan.

8. During Ms. Lutfallah's employment with Galen, she worked primarily remotely from her home in Ontario, Canada, but she also traveled frequently, usually at least once or twice a month, to Baltimore to perform work at Galen's corporate offices from May 2021 through April 2023.

9. In or about August 2021, Ms. Lutfallah was moved internally to the position of Field Clinical Engineer on a new team reporting to Ed Tacdol, Galen's Director of Clinical Operations.

10. In or about September 2022, Ms. Lutfallah began reporting directly to Mr. Lichorowic until approximately February 2023, when Ms. Lutfallah began reporting Dave Saunders, Galen's Chief Technology Officer.

11. At all times until her employment was terminated on or about October 16, 2023, Ms. Lutfallah was consistently and routinely praised for her excellent job performance.

12. Beginning in July 2022, based on the instructions of Mr. Lichorowic, Galen stopped paying Ms. Lutfallah for the work that she performed for Galen.

13. Between July 2022 and her final date of employment with Galen, Ms. Lutfallah only received two payments for the wages that she earned during that period – one payment in or about December 2022, and a final payment in or about April 2023.

14. At all relevant times, Mr. Lichorowic decided whether Ms. Lutfallah (and other Galen employees) would be paid their earned wages or not during any given month and how much they would be paid, and Mr. Lichorowic was responsible for and actively involved in managing the day to day operations, including payroll, of Galen.

15. On February 15, 2023, after Ms. Lutfallah expressed her concerns to Mr. Lichorowic that she had not been paid in a long time, Mr. Lichorowic informed Ms. Lutfallah that she was being promoted to the position of Senior Clinical Development Engineer and that she would be receiving a substantial pay raise, merit bonus payment and additional shares of Galen's common stock.

16. These promises were implemented – in writing – on March 15, 2023, when Ms. Lutfallah was formally provided with a merit pay raise, effective January 1, 2023, in recognition of her previous promotion (her annual salary was increased to $130,000) and she was granted an additional 50,000 shares of Galen's common stock.

17. During the first nine months of 2023, Mr. Lichorowic repeatedly informed Galen employees, including Ms. Lutfallah, that he was optimistic about various funding opportunities which he expected to move forward within the next several months or upon FDA approval of Galen's primary product, and he frequently promised – falsely – that new investment funds would be coming into Galen which would allow Galen to pay back wages to employees, including Ms. Lutfallah.

18. On or about May 1, 2023, Mr. Lichorowic informed Ms. Lutfallah that she was being offered a retention bonus and additional stock grants in return for "converting" some or all of her owed back pay into stock options.

19. Ms. Lutfallah expressed her concerns about this proposed plan to Mr. Lichorowic in early June 2023, and he assured her – falsely – that her back pay would be paid to her as soon as Galen received additional funding, which he represented would be received by Galen in July or August 2023.

20. On June 20, 2023, Mr. Lichorowic informed Ms. Lutfallah – falsely – that he expected to send out paychecks later that month and was just waiting for signatures on two sets of paperwork from investors.

21. In or about July 2023, the Food and Drug Administration ("FDA") approved one of Galen's primary robotic devices for sales to the public.

22. Mr. Lichorowic informed Galen's staff, including Ms. Lutfallah, that as a result of the FDA approval, investors would soon begin investing monies in Galen.

23. On or about September 27, 2023, Mr. Lichorowic was removed from his position as CEO of Galen by Galen's Board of Directors and replaced by Mark Singer.

24. On October 3, 2023, Matt Link, Chairman of the Board of Galen, sent an email to all Galen stockholders, including Ms. Lutfallah, stating that "the company has significant liabilities, nearly no cash to continue operations and no funding secured that can materially sustain operations."

25.     On or about October 16, 2023, Ms. Lutfallah was notified by Galen that she would be transitioning to an hourly employee, and that her services would only be required on an hourly fee basis moving forward.

26.     Ms. Lutfallah has not worked for Galen since on or about October 16, 2023.

27.     At no point during her employment with Galen was Ms. Lutfallah ever disciplined, placed on a performance improvement plan or notified of any significant problems with her job performance.

28.     At present, Ms. Lutfallah is owed approximately $129,795.20 for unpaid wages, including unpaid business expenses, for the period from July 15, 2022 to October 16, 2023.

## COUNT I

## FLSA – FAIR LABOR STANDARDS ACT

29.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

30.     Defendants are subject to the requirements of the FLSA pursuant to FLSA, 29 U.S.C. § 207(a)(2), and Ms. Lutfallah is subject to the requirements of the FLSA pursuant to FLSA, 29 U.S.C. § 207(a)(1).

31.     Beginning in July 2022, Ms. Lutfallah worked a full time schedule for Defendants but was never paid her salary, including any earned wages, such as minimum wage payments or overtime payments, for the services that she performed for Defendants.

32.     Defendants's failure to pay any wages, including minimum wages and overtime wages, to Ms. Lutfallah was willful and intentional, and was not in good faith nor was it predicated on any reasonable grounds.

33. Defendants's failure to pay any wages, including minimum wages and overtime wages, to Ms Lutfallah constituted willful conduct, because Defendants either knew or showed reckless disregard for the matter of whether their conduct was prohibited by statute.

34. Ms. Lutfallah suffered substantial monetary damages as a direct and proximate result of Defendants's unlawful conduct.

WHEREFORE, Plaintiff demands judgment in an amount greater than three-hundred thousand dollars ($300,000.00) against Defendants, jointly and severally, in compensatory damages, including back pay, liquidated damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court.

## COUNT II

## MWHL – MARYLAND WAGE AND HOUR LAW

35. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

36. Defendants are subject to the requirements of the MWHL.

37. Beginning in July 2022, Ms. Lutfallah worked a full time schedule for Defendants but was never paid her earned wages, including any minimum wage payments, straight time payments or overtime payments, in violation of Maryland Labor and Employment Code Ann. §§ 3-413, 3-415, 3-420 and 3-428, for the services that she performed for Defendants.

38. Defendants's failure to pay any wages, including minimum wages, straight time wages and overtime wages, to Ms. Lutfallah was willful and intentional and was not in good faith nor was it predicated on any reasonable grounds or based upon any bona fide dispute.

39. Ms. Lutfallah suffered substantial monetary damages as a direct and proximate result of

Defendants's unlawful and discriminatory conduct.

WHEREFORE, Plaintiff demands judgment in an amount greater than one-hundred thousand dollars ($100,000.00) against Defendants, jointly and severally, in compensatory damages, including back pay, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court.

### COUNT III

### MWPCL – MARYLAND WAGE PAYMENT AND COLLECTION LAW

40. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

41. Defendants are subject to the requirements of the MWPCL.

42. The MWPCL's purpose is to provide a vehicle for employees to collect, and as an incentive for employers to pay, back wages owed to employees.

43. The MWPCL requires that employers pay all wages due for work performed by employees in a timely manner.

44. Beginning in July 2022, Ms. Lutfallah worked a full time schedule for Defendants but was never paid her earned wages, including her salary, in violation of Maryland Labor and Employment Code Ann. §§ 3-502 and 3-505, for the services that she performed for Defendants.

45. Defendants's failure to pay any wages, including minimum wages, straight time wages and overtime wages, to Ms. Lutfallah was willful and intentional, and was not in good faith nor was it predicated on any reasonable grounds or based upon any bona fide dispute.

46. Ms. Lutfallah suffered substantial monetary damages as a direct and proximate result of Defendants's unlawful and discriminatory conduct.

47.     Pursuant to Md. Labor and Employment Code Ann. § 3-507.1, Ms. Lutfallah seeks liquidated damages in an amount of three (3) times the wages which were never paid to Plaintiff.

WHEREFORE, Plaintiff demands judgment in an amount greater than three-hundred thousand dollars ($300,000.00) against Defendants, jointly and severally, in compensatory damages, including back pay, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court.

Dated: July 16, 2024                                                  Respectfully submitted,

                                                                                  /s/
                                                                    Andrew M. Dansicker (Bar # 11765)
                                                                    Law Office of Andrew M. Dansicker, LLC
                                                                    Executive Plaza II, Suite 705
                                                                    11350 McCormick Road
                                                                    Hunt Valley, Maryland 21031

                                                                    adansicker@dansickerlaw.com

                                                                    *Counsel for Plaintiff Claudia Lutfallah*

## **PRAYER FOR JURY TRIAL**

Plaintiff Claudia Lutfallah hereby requests a jury trial.

/s/
Andrew M. Dansicker
